IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re: Application of PQ Corporation for *Ex Parte* Order to Obtain Discovery for Use in Foreign Proceedings | Misc. Case No.: 6:13-mc-9-Orl-36KRS |

APPLICATION OF PQ CORPORATION FOR
AN *EX PARTE* ORDER PURSUANT TO 28 U.S.C. §1782(a)
TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

I.  INTRODUCTION

PQ Corporation respectfully submits this application, pursuant to 28 U.S.C. §1782(a), for an *ex parte* order for discovery for use in a district court proceeding in the Republic of Korea. Thomas J. Pullukat, a resident of Lake Mary, Florida, has certain information that is relevant to PQ Corporation's foreign claim against a third party, KD Corporation ("KD").

Mr. Pullukat is a former Manager of Research and Development and Commercial Director for PQ's Silica Catalysts business unit. Declaration of John Lau at Attachment 1 hereto, ¶2. In these capacities, Mr. Pullukat had access to PQ's confidential technical information, including PQ's proprietary "chrome-on-silica" catalyst technology. *Id.* ¶5. He also had access to sensitive commercial information relating to PQ's customers. *Id.* After retiring from PQ, Mr. Pullukat became a consultant for KD, ostensibly to help KD launch its catalyst business. On its website, KD lists an United States office in Lake Mary, Florida, Mr. Pullukat's residence. *Id.* ¶30.

KD had no commercial chrome-on-silica catalyst product before it consulted with Mr. Pullukat. Lau Decl. ¶¶9, 25. Yet, after consulting with Mr. Pullukat, KD made a family of

chrome-on-silica catalyst products similar to PQ's. *Id*. ¶25. These KD chrome-on-silica catalysts infringe PQ's registered Korean patents. *Id*. ¶¶25-27.

PQ believes that, in the course of consulting with KD, Mr. Pullukat, without PQ's authorization, disclosed certain PQ proprietary and confidential information to KD relating to PQ's proprietary chrome-on-silica catalysts. *Id*. ¶25. PQ Corporation seeks an *ex parte* order permitting it to require Thomas J. Pullukat to provide certain documents, electronic records, and deposition testimony for use by PQ Corporation in connection with an anticipated patent infringement and trade secret misappropriation action against KD in the Republic of Korea.

## II.   BACKGROUND

PQ Corporation is the owner of certain proprietary and confidential technical information relating to catalysts. Catalysts are chemical substances that are used in a wide variety of industrial applications. Catalysts speed up reactions that would otherwise proceed too slowly to be practical or economical. In doing so, they may make the process economically viable and provide other benefits such as more effective control over the reaction.

Catalysts are used in applications ranging from chemical processing to treating automobile exhaust. The catalysts at issue in this application are for the polymerization of ethylene to make polyethylene plastics. They help the molecules of the raw material react with one another to form the desired type of polyethylene plastic.

### A.   The Chrome-On-Silica Catalyst

The particular catalysts at issue in this application are PQ's chrome-on-silica catalysts. These catalysts are used to make high-density polyethylene plastics. These plastics are used in a wide variety of other products from blow-molding parts and containers, to films and sheets, to pipes, to wire and cables, and other products. Broadly, the process of making these plastics is

referred to as ethylene polymerization. The catalyst supports a reaction in which the small ethylene molecules are linked together in a process called polymerization to make larger molecules. These larger molecules are called polymers. The catalyst helps control how the ethylene molecules are assembled or polymerized into these larger polyethylene molecules.

The proprietary PQ catalysts at issue in this application contain chromium, aluminum, and boron on a silica gel support. Lau Decl. ¶10. For ease of reference, these proprietary PQ catalysts are referred to in this application as "chrome-on-silica" catalysts. The proprietary technology involves how the chrome-on-silica catalysts are made, namely, how the metals are deposited on the silica gel support, as well as the finished catalyst product.

The technology involved in developing and making these chrome–on–silica catalysts is challenging. Lau Decl. ¶10. Different methods of preparing the chrome-on-silica catalyst can result in high-density polyethylene plastics having different, and possibly undesirable, properties. *Id.* PQ has already been granted patents in the United States and Korea and is still prosecuting applications in other countries. *Id.* ¶¶22-23. As evidenced by the patent claims that have been allowed on this invention worldwide, including PQ's registered Korean patents, PQ's proprietary chrome-on-silica catalyst technology is far from obvious.

The chrome-on-silica catalyst is made by adding certain chemicals to a catalyst support. *Id.* ¶10. The catalyst support is a silica gel. Silica gel is used as a support for the catalyst because it has a porous structure. The volume and size of the pores in the silica gel can be controlled and chemicals can be added to the pores that enable the designer to control the properties of the catalyst.

PQ filed its first application for international patents on these proprietary catalysts on October 26, 2007. Lau. Decl. ¶¶22-23. These applications have resulted in a number of

international patents applications that have already been allowed. *Id*. PQ continues to prosecute these patent applications in other countries to secure additional patents.

PQ has filed two Korean patent applications on its chrome-on-silica catalyst technology. Application Serial Nos. 10-2010-7011247, and 10-2011-7022339. *Id.* ¶23. Both claim priority back to PQ's October 26, 2007, priority date. *Id.* Both have been registered by the Korean Intellectual Property Office. *Id*. The first covers various methods for sequential deposition of the metals on the support and the second covers simultaneous deposition of the metals on the support. *Id.* The allowed Korean claims cover both a method for preparing a catalyst precursor, as well as the catalyst precursor itself. Claim 1 is representative of the method claims. Claim 9 is representative of the product claims. Translations of Claims 1 and 9 from Korean Patent No. 211924 follow:

> 1.   A method for preparing a catalyst precursor for an olefin polymerization catalyst, the catalyst precursor comprising an silica xerogel inorganic support material that includes $SiO_2$ having 90% ~ 100% by weight, said silica xerogel carrying a chromium salt, aluminum carboxylate and boric acid within the pore structure of the inorganic support material, said method comprising:
>
> i)  a step of providing a silica xerogel inorganic support material containing 90% ~ 100% by weight with porosity of 0.5 ~ 4.0 $cm^3/g$;
>
> ii) a step of providing a solution containing chromium salt, aluminum carboxylate and boric acid in the solvent which is water, $C_1$~ $C_4$ aliphatic alcohol, or a mixture thereof
>
> iii)  a step of depositing said solution onto said inorganic support material; and
>
> iv)  a step of removing said solvent to form the catalyst precursor containing chromium salt, aluminum carboxylate and boric acid within said silica xerogel pore structure
>
> 9.   An olefin polymerization catalyst precursor including silica xerogel having 90% ~ 100% by weight of $SiO_2$ and comprising within said silica xerogel pore structure chromium salt, selected from chromium

4

> carboxylate, chromium sulphate, chromium chloride, or mixtures thereof; aluminum carboxylate; and boric acid.

Lau Decl. ¶23, Exhibit F.

Two Korean patents have recently been registered to PQ. PQ plans to proceed with a Korean district court patent infringement and trade secret misappropriation action against KD promptly. *Id.* ¶¶24, 27.

### B.   Thomas Pullukat Had Access to PQ's Proprietary Technology

Thomas J. Pullukat is a former PQ employee. Beginning on August 15, 1991, Mr. Pullukat was employed by PQ as Manager of Research and Development and Commercial Director for PQ's Silica Catalysts business unit. Lau Decl. ¶2. By the early 2000s, Mr. Pullukat had moved to a senior commercial role in PQ. *Id.* In these roles, Mr. Pullukat had access to all of PQ's formulas and recipes for PQ's chrome-on-silica catalysts. *Id.* at ¶5. This includes proprietary and technical information relating to the catalysts at issue in this application. *Id.* He also had access to sensitive commercial information about PQ's customers. *Id.*

Mr. Pullukat has an employment agreement with PQ. *Id.* ¶3. This Employment Agreement requires him to maintain in confidence PQ's proprietary and confidential trade secrets, including those relating to PQ's chrome-on-silica catalyst technology. *Id.* at ¶4, Exhibit A.

As Manager of Research and Development, Mr. Pullukat was also responsible for technical development work at PQ. *Id.* ¶7. This includes keeping up-to-date with the state of technology in the catalyst field generally. This would require him to have contact with competitors of PQ, as PQ's representative. *Id.* ¶¶7-8.

PQ contracted with KD for KD to serve as a toll-manufacturer for products unrelated to chrome-on-silica catalysts for PQ for several years while Mr. Pullukat was an employee of PQ.

5

*Id.* ¶¶7, 8. While he was employed by PQ, Mr. Pullukat developed a relationship with certain employees of KD in his role as PQ's representative. *Id.* ¶8. In this capacity, Mr. Pullukat travelled to KD's facilities in Korea and on behalf of PQ. *Id.* Most important, Mr. Pullukat continued to use the relationships he had developed with KD while employed by PQ in his consulting business once he left PQ.

### C. Mr. Pullukat Consulted with KD

KD is a silicate and silica gel manufacturer located in the Republic of Korea. KD's silica gel products are primarily used for desiccant applications. Silica gel is widely packaged with electronic products to ensure that they remain dry. Prior to the early 2000s, KD did not make a chrome–on–silica catalyst. *Id.* at ¶25. Nor did PQ authorize KD to have access to PQ's proprietary and confidential chrome-on-silica catalyst technology. *Id*. ¶25.

Mr. Pullukat retired from PQ in September 2006. *Id.* ¶13. When he retired, Mr. Pullukat set up two consulting firms known as SilCat Consultants, Inc., and SilCat Consultants LLC. *Id.* He began consulting in the catalyst industry. Among the companies for whom Mr. Pullukat consulted after he left PQ is KD. *Id.* ¶25.

### D. KD's Infringing Chrome-on-Silica Catalyst

Prior to the time Mr. Pullukat consulted with KD, KD did not have a chrome-on-silica catalyst product. *Id.* at ¶¶9, 25. Yet, shortly after KD began consulting with Mr. Pullukat, KD developed and released a family of chrome-on-silica catalyst products. *Id.* ¶25.

KD's chrome-on-silica catalysts appear to be identical to PQ's chrome-on-silica catalysts. *Id.* ¶26. PQ recently obtained samples of the KD catalysts and has analyzed the KD samples. *Id.* The KD samples employ PQ's trade secret formulation that PQ was using and to which Mr. Pullukat had access. *Id.* ¶¶26, 27. PQ's technical analyses also establish that KD's chrome-on-silica catalysts infringe the claims of PQ's patents that were recently registered in Korea. *Id.*

6

As PQ's former Manager of Research and Development and Commercial Director, Mr. Pullukat had access to PQ's trade secrets, as well as its proprietary and confidential technical formulations for its catalysts. *Id.* ¶¶5-7. This information is extremely valuable proprietary information that belongs exclusively to PQ. *Id*. at ¶6. PQ has used this information in its business and it gives PQ a substantial commercial advantage over its competitors. *Id*. The information is highly confidential. *Id*.

### E. The Discovery Sought Is Needed for an Anticipated Korean Patent Infringement and Trade Secret Misappropriation Action

PQ believes that when Mr. Pullukat began consulting with KD after he retired from PQ, he transferred to KD some, if not all, of this highly confidential and proprietary technical information relating to PQ's chrome-on-silica catalyst technology. *Id*. at ¶¶25-27. This information enabled KD to make a commercially viable chrome-on-silica catalyst product and to enter the market for this product. *Id.* PQ believes that KD has misappropriated PQ's trade secrets and is infringing PQ's allowed Korean patent claims for its chrome-on-silica catalyst formulation and method of making the chrome-on-silica catalyst. *Id.*

The discovery that PQ seeks from Mr. Pullukat cannot be obtained in the foreign proceeding. *Id.* ¶28. The proceeding being anticipated by PQ is a district court action for patent infringement and trade secret misappropriation in the Republic of Korea. *Id.* at ¶27. The Republic of Korea does not provide compulsory pretrial discovery. Declaration of Hwan Sung Park at Attachment 2 hereto, ¶2. Moreover, the district courts of the Republic of Korea cannot exercise jurisdiction over Mr. Pullukat as he is a United States resident. *Id.* at ¶3. The information that PQ expects to obtain by this application is located in the United States and is under Mr. Pullukat's control. *Id*. at ¶5. Accordingly, PQ Corporation seeks discovery of Mr. Pullukat, pursuant to 28 U.S.C. § 1782(a).

7

For the reasons identified below, PQ Corporation satisfies all of the statutory requirements of § 1782(a). PQ Corporation respectfully requests that this court exercise its discretion to allow this discovery. The limited and specific relief that PQ Corporation seeks by this application is narrowly targeted to the particular chrome-on-silica catalyst at issue in the anticipated Korean litigation and Mr. Pullukat's consulting relationship with KD Corporation, and is warranted based on the evidentiary showing submitted with this application.

### III.  ARGUMENT

Congress has expressly authorized the district courts to assist persons involved in anticipated legal proceedings outside the United States to obtain discovery for use in the foreign legal proceeding. 28 U.S.C. §1782(a). This relief may seem extreme, particularly given that most foreign legal systems do not permit pre-trial discovery, let alone the extent of pre-trial discovery provided in the United States. It may also seem unusual in that Section 1782 does not require that the foreign proceeding have been commenced at the time of the Section 1782 application. Neither is required. Congress was very specific and clear in providing this opportunity to obtain discovery. This opportunity is even more critical in today's global economy.

#### A.  Section 1782 Authorizes the Discovery Requested

Section 1782 of Title 28 provides that the district courts may order discovery taken for use in a foreign legal proceeding. The proceeding may be anticipated and need not have been started. The application for discovery may be made by any interested person.

> (a)  The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. ***The order may be made*** pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or ***upon the application of any interested person and may direct that the testimony or statement be given or a document or other thing be***

8

>*produced*, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in part or whole the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. §1782(a).

This court has the authority to grant discovery under § 1782(a) if the following conditions are met:

1. The request must be made by an "interested person;"

2. The request seeks either the "testimony or statement" of a person or the production of a "document or other thing;"

3. The evidence must be for use in a proceeding in "a foreign or international tribunal;" and

4. The person from whom the discovery is sought must reside or be found in the district that is ruling on the application.

*In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007).

PQ meets all of these requirements. First, PQ is an "interested person." PQ will be the plaintiff in the district court patent infringement and trade secret misappropriation action that will be filed in the Republic of Korea. Lau Decl. ¶¶24, 27.

Second, PQ seeks specific documents and deposition testimony from Mr. Pullukat. Specifically, PQ seeks testimony and documents regarding PQ's chrome-on-silica catalyst technology and Mr. Pullukat's consulting work and communications with KD relating to the subject matter of PQ's trade secrets and patented technology.

Third, the requested evidence will be used in connection with the patent infringement and trade secret misappropriation claims in the Republic of Korea. This is a proceeding in a foreign tribunal.

The foreign action need not be pending, nor need it be imminent. It need only be "within reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 258-59 (2004); *In re Clerici*, 481 F.3d 1334. Section 1782(a) embraces not only pending disputes but disputes that are anticipated or contemplated. MOORE'S FEDERAL RULES PAMPHLET §1782.2[2]. In *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, the United States Court of Appeals for the Eleventh Circuit held that the a proceeding need not be "pending" to invoke § 1782(a). *Intel*, 542 U.S. at 253 (*citing Trinidad and Tobago*, 848 F.2d 1151, 1155 (11th Cir. 1988) (overruled by *Intel* on other grounds)). Rather, the availability of discovery under Section 1782(a) turns on whether the requested evidence would "likely be of use in a judicial proceeding." 848 F.2d at 1155. The Eleventh Circuit held that the district court did not abuse its discretion in granting discovery under § 1782(a) although the discovery had been requested for a *future* proceeding that had not yet been filed. *Id.* at 1156.

PQ's Korean trade secret misappropriation and patent infringement claims against KD are reasonably contemplated. Lau Decl. ¶¶24, 27. The information sought would likely be of use in the Korean action. Park Decl. ¶8. The information sought is highly material to the Korean trade secret and patent infringement claims. *Id*. PQ's Korean patents have been registered. PQ intends to proceed promptly with a Korean district court action. Lau Decl. ¶¶24, 27.

Fourth, Mr. Pullukat resides and maintains his consulting business in Lake Mary, Florida. *Id.* at ¶29. This is apparently the same location as KD's Florida office. *Id.* at ¶30. Mr. Pullukat is located within the jurisdiction of the United States District Court for the Middle District of Florida. And the Orlando Division is the Division that is closest to Mr. Pullukat's residence.

Thus, this request is being made by an interested person. It seeks the testimony or statement and the production of documents and other things from a person who resides in this district for use in a foreign or international tribunal.

### B. Additional Factors Support the Application

The United States Supreme Court and the United States Court of Appeals for the Eleventh Circuit have identified additional factors that "bear consideration" in deciding whether or not to permit discovery under § 1782(a). Each of these additional factors is also satisfied here.

1. [W] whether "the person from whom discovery is sought is a participant in the foreign proceeding" because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant;"

2. "The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;"

3. "Whether the § 1782(a) request conceals an attempt to circumvent foreign proof–gathering restrictions or other policies of a foreign country or the United States;" and

4. Whether the request is otherwise "unduly intrusive or burdensome."

*Intel Corp.* 542 U.S. at 264-65; *In re Clerici*, 481 F.3d at 1334.

With respect to the first factor, Mr. Pullukat will not be a party to the Korean litigation. KD uses the infringing process and manufactures the infringing product, not Mr. Pullukat. KD does so in Korea, not in the United States. KD has used PQ's trade secrets in Korea, not in the United States. Although PQ believes that Mr. Pullukat misappropriated PQ's trade secrets and disclosed them to KD without PQ's authorization, Lau Decl. ¶¶25, 26, PQ has no reason to believe at this time that Mr. Pullukat has ever used the trade secrets outside of his employment with PQ. Mr. Pullukat is an individual. He has limited means. He is essentially judgment–proof. He is not a resident of Korea. The Korean court cannot force him to provide testimony or

evidence related to his activities with respect to either the subject matter of the Korean patent or the misappropriation of PQ's trade secrets. Park Decl. ¶3.

This court, however, can. This court has personal jurisdiction over Mr. Pullukat. Lau Decl. ¶29. This court has jurisdiction to require Mr. Pullukat to provide such testimony and to produce documents and things. Doing so would greatly assist the district courts of the Republic of Korea. Pretrial discovery is not available in Korea. Park Decl. ¶8. Mr. Pullukat's testimony, documents, and other things that may be produced by this application will not otherwise be considered in the Korean proceeding.

Second, the Korean proceeding will be a patent infringement and trade secret misappropriation proceeding before the district court of the Republic of Korea. Lau Decl. ¶¶24, 27. The discovery that PQ secures on this application would help inform the Korean tribunal's understanding of the nature and scope of the information that was communicated to KD by Mr. Pullukat. Park Decl. ¶8. This communication is the essence of PQ's misappropriation claim. This information is also the essential information that enables KD to practice PQ's patented technology, resulting in the infringement of PQ's Korean patent. Lau Decl. ¶¶25-27.

The Korean district court will likely be receptive to this information as it is directly relevant and highly material to the issues that will be before it in the patent infringement and trade secret misappropriation proceeding. Park Decl. ¶8.

The United States Supreme Court and United States Court of Appeals for the Eleventh Circuit have both made clear that § 1782(a) discovery is appropriate even in situations where a tribunal would not order such discovery itself, or where a tribunal might not accept all discovery properly ordered pursuant to § 1782(A). *In re Roz Trading Ltd.*, 207 U.S. Dist. Lexis 2112 at 7–8 (Jan. 11, 2007, N.D. GA) (The court is not required "to find that the [foreign] tribunal will

definitely welcome and accept discovery pursuant to § 1782. The court is required only to evaluate the nature and character of the proceedings and the overall receptivity of the tribunal to its assistance.") Foreign discoverability of the evidence is not required. *Intel*, 542 U.S. at 253. Nor is comity or parity with the foreign jurisdiction. *Id.*

Third, this request is not an attempt to circumvent foreign proof–gathering restrictions or other policies of either the Republic of Korea or the United States. No such restriction or policy exists. Korea does not restrict the evidence sought by this application. Park Decl. ¶4. It simply does not provide for pretrial discovery. *Id*. ¶¶2-3. Were the information available to PQ at the time of commencement of the Korean district court proceeding, it is the type of information that would be received in evidence in the patent infringement and trade secret misappropriation proceedings in the Republic of Korea. *Id*. at ¶8.

Finally, the request is not "unduly intrusive or burdensome." Rather, PQ seeks specific and limited documents and information. The document requests are narrowly tailored to subjects that are relevant and highly material to Mr. Pullukat and his involvement in the unauthorized misappropriation of PQ's trade secrets and the unauthorized use of PQ's technical information by KD. The topics for examination are limited to only three discrete subjects: (1) documents and things relating to PQ's chrome-on-silica catalyst technology trade secrets; (2) documents and things relating to the subject matter of PQ's allowed chrome-on-silica Korean patent application claims; and (3) Mr. Pullukat's consulting relationship and communications with KD.

Each of these supplemental factors weighs in PQ's favor. Where, as here, the application satisfies the statutory requirements of § 1782(a) and the additional factors support the application, courts in this district and this circuit have consistently permitted discovery under § 1782(a). *Lopes v. Lopes*, 180 Fed. Appx. 874 (11th Cir. 2006); *In re Xavier*, 2006 U.S. App.

LEXIS 8132 (11th Cir. 2006); *In re Roz Trading Ltd.*, 469 F.Supp.2d 1221 (N.D. GA 2006); *Weber v. Finkler*, 207 WL 42 85362 (M.D. Fla. Nov. 30, 2007); *In re Letter Request from the District Court Stara Lubovna*, 209 WL 371-1924 (M.D. Fla. Nov. 5, 2009).

        **C.**      **PQ's Discovery Requests are Narrowly Tailored**

PQ seeks documents and information relating to the unauthorized disclosure of the subject matter of PQ's trade secrets by Mr. Pullukat to KD. PQ also seeks information regarding Mr. Pullukat's communications with KD of the subject matter of PQ's allowed patents.. Specifically, PQ seeks only documents and information that are in Mr. Pullukat's possession, custody, or control.

    1.    All documents and things relating to PQ's chrome-on-silica catalyst technology trade secrets.

    2.    All documents and things relating to the subject matter of PQ's allowed chrome-on-silica catalyst technology Korean patent claims.

    3.    All communications (whether they are memorialized in documents, things, or otherwise) between Mr. Pullukat and KD or any person representing KD, including Mr. Pullukat's consulting work with KD after he left PQ and his compensation for that work.

In addition, PQ requests a deposition of Mr. Pullukat relating to these subjects. These discovery requests are set forth more specifically in Attachments 3 and 4 to this application. Attachment 3 is a proposed subpoena to produce documents and things. Attachment 4 is a proposed subpoena to testify at a deposition. PQ proposes to serve these proposed Rule 45 subpoenas—with this court's authorization—upon Mr. Pullukat.

PQ respectfully requests this court's authorization to pursue this discovery. Specifically, PQ requests that the court order Mr. Pullukat to produce documents and things on these limited subjects and to provide Rule 30(b)(1) deposition testimony on these subjects.

14

If the court grants PQ's application for an order compelling the requested discovery, PQ requests that any objections be served by February 15, 2013 (four weeks), that any documents and other things be produced not later than March 1, 2013 (six weeks), and that the deposition occur not later than March 15, 2013 (eight weeks).

Section 1782(a) expressly provides that this court may prescribe the practice and procedure for the production of documents and things and for the taking of testimony. PQ respectfully requests that the court prescribe that the testimony and statements shall be taken and the documents and/or other things produced in accordance with the Federal Rules of Civil Procedure, except as expressly provided in the Court's order. In this situation, PQ must urgently obtain the requested information because it needs to be included in the Complaint at the time the Complaint is filed in the patent infringement action and trade secret misappropriation action in the Republic of Korea. As discussed above, this proceeding must be filed at the soonest possible date in order to preserve the PQ's proprietary and confidential information and to preserve PQ's exclusive rights under its patents in the Republic of Korea.

## IV.   CONCLUSION

While he was PQ's Manager of Research and Development and Commercial Director for PQ's Silica Catalysts business unit, Mr. Pullukat had access to PQ's proprietary technology. This includes PQ's proprietary chrome-on-silica catalyst technology that is the subject of this application. After he retired from PQ, Mr. Pullukat consulted with PQ's competitors, including KD. Although he was permitted to consult, Mr. Pullukat was obliged not to disclose to anyone PQ's proprietary technology. Prior to consulting with Mr. Pullukat, KD had no chrome-on-silica-catalyst technology. This is understandable, given the difficulty of developing and making chrome-on-silica catalysts work. Yet, after consulting with Mr. Pullukat, KD promptly launched

a family of chrome-on-silica catalysts that appear to be identical to PQ's. PQ has analyzed some of these products and believes they use PQ's proprietary technology that was misappropriated from PQ, and infringe PQ's registered Korean patents. PQ believes that Mr. Pullukat disclosed to KD PQ's proprietary trade secrets and technical information covered by PQ's registered Korean patents. PQ respectfully requests that the Court enter an order, pursuant to 28 U.S.C. §1782(a), authorizing PQ to obtain from Mr. Pullukat the discovery set forth in the proposed Rule 45 subpoenas attached hereto as Attachments 3 and 4.

Respectfully Submitted,

January 23, 2013

Stephen H. Luther, (FBN# 528846)
sluther@addmg.com
ALLEN, DYER, DOPPELT,
 MILBRATH & GILCHRIST, P.A.
255 S. Orange Avenue
Suite 1401
Orlando, Florida 32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343
*Counsel for Applicant, PQ Corporation*

OF COUNSEL

Patrick J. Coyne
Christopher P. Foley
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone: (202) 408-4470
Facsimile: (202) 408-4400
patrick.coyne@finnegan.com
christopher.foley@finnegan.com

## CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the United States that on this 23rd day of January, 2013, I caused to be served a copy of the attached APPLICATION OF PQ CORPORATION FOR AN *EX PARTE* ORDER PURSUANT TO 28 U.S.C. §1782(a) TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS upon the following person(s) in the manner indicated below at the following address(es):

> Thomas J. Pullukat
> 1613 Cherry Ridge Drive
> Lake Mary, Florida 32746-1943

Dated: January 23, 2013

_____
Stephen H. Luther